## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY | : | |
| *Plaintiff,* | : | Case No.: 12-CV-4548 (WHP) |
| | : | |
| v. | : | Civil Action |
| | : | |
| SMITH BROTHERS INSURANCE, INC. and | : | |
| JAMES BARTLETT NELSON, | : | |
| *Defendants,* | : | |
| | : | |
| and | : | |
| | : | |
| JAMES BARTLETT NELSON and SMITH | : | |
| BROTHERS INSURANCE, INC. | : | |
| *Third Party Plaintiffs,* | : | |
| | : | |
| vs. | : | |
| | : | |
| CITADEL CONSTRUCTION CORP., DAVID | : | |
| P. STACK, MOHAMMAD HASSANKHANI, | : | |
| EDWARD ROMERO, F. ROBERT | : | |
| LASARACINA, CPA, LLC and GORDON | : | |
| FAMILY TRUST. | : | |
| *Third Party Defendants.* | : | |

### DEFENDANTS' JOINT MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO STAY

## TABLE OF CONTENTS

I.   BACKGROUND. ..................................................................................................... 1

II.  LAW AND ARGUMENT. ....................................................................................... 6

A.   STANDARD OF REVIEW. ................................................................................ 6

B.   IT IS A PROPER EXERCISE OF THE DISTRICT COURT'S DISCRETION TO ENTER A
STAY OF PROCEEDINGS AS TO NELSON BECAUSE HE IS A TARGET OF A FEDERAL
CRIMINAL INVESTIGATION ON THE EXACT SAME FACTS AS HANOVER'S COMPLAINT. ... 8

1.   The Factual Overlap of Issues Between the Civil and Criminal Matters Strongly
Supports The Stay. ........................................................................................... 9

2.   Because The Criminal Case Has Progressed Beyond The Investigative Stage, The
Status Of The Criminal Case Supports The Stay. ......................................... 11

3.   Hanover's Private Interests In Prompt Adjudication Are Weak When Weighed
Against Any Delay And Do Not Diminish The Need For The Stay. ...................... 12

4.   The Private Interests Of and The Burden On Defendant Nelson Strongly Support
The Entry Of The Stay. ..................................................................................... 13

5.   The Interests Of The Courts Favor The Entry Of A Stay. ................................ 16

6.   The Public's Interest Favors the Entry of a Stay. ............................................ 16

C.   NELSON'S ASSERTION OF HIS FIFTH AMENDMENT RIGHTS WILL MATERIALLY
PREJUDICE SBI'S ABILITY TO MOUNT ITS OWN DEFENSE AND, ACCORDINGLY, THE
INTERESTS OF JUSTICE, FAIRNESS, AND EFFICIENCY INDEPENDENTLY SUPPORT THE
ENTRY OF A STAY OF PROCEEDINGS AS TO SBI. .............................................. 17

III.  CONCLUSION. ................................................................................................... 24

ii

# **TABLE OF AUTHORITIES**

## *Cases*

*American Express Business Finance Corp. v. RW Professional Leasing Services Corp., 225 F.Supp.2d 263* (E.D.N.Y. 2002) ................................................................................................................ 17

*Banks v. Yokemick*, 144 F. Supp. 2d 272 (S.D.N.Y. 2001) ........................................................ 7

*Britt v. International Bus Servs.*, 255 A.D.2d 143, 679 N.Y.S.2d 616 (1st Dep't 1998).................... 18, 19

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y.1985) .............................................................. 7, 11

*Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147 (E.D.N.Y. 1977) .................................... 8, 22

*Corcoran Law Group LLC v. Posner*, 2009 WL 1739702 (S.D.N.Y.) ...................................... passim

*DeSiervi v. Liverzani*, 136 A.D.2d 527, 523 N.Y.S.2d 147 (2nd Dep't 1988)........................... 22

*Dienstag v. Bronsen*, 49 F.R.D. 327 (S.D.N.Y. 1970) ......................................................... 8, 22

*In re Marceca*, 131 B.R. 774 (Bankr. S.D.N.Y. 1991) .......................................................... 11

*Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir.1986) ................................................................ 6, 11

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (C.A.9 1995)........................................... 7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. N.Y. 2012)................................. 7, 8, 12

*Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118 (S.D.N.Y.1980) ........... 7

*Parker v. Dawson*, 2007 U.S. Dist. LEXIS 63068 (E.D.N.Y. Aug. 27, 2007) ................................. 8

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C.Cir.) .............................................................. 6

*SEC v. Treadway*, 2005 U.S. Dist. LEXIS 4951 (S.D.N.Y. Mar. 30, 2005) .................................... 8

*Transatlantic Reinsurance Co. v. Salvatore Ditrapani, Int'l* 1991 U.S. Dist. LEXIS 872 (S.D.N.Y. Jan. 28, 1991................................................................................................................ 7

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F. Supp. 1134 (SDNY 1994) .................................................................................. 8, 9, 14, 17

*U.S. v. Katsougrakis,* 715 F.2d 769 (2nd Cir. 1983) ........................................................... 23

*United States v. $557,933.89, More or Less, in United States Funds*, 1998 U.S. Dist. LEXIS 22252

  (E.D.N.Y. Mar. 2, 1998) ................................................................................................... 11

*United States v. Certain Real Property & Premises*, 751 F. Supp. 1060 (E.D.N.Y. 1989) ...................... 11

*United States v. Kordel*, 397 U.S. 1 (1970) ................................................................................ 6

*Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y.1993) ...................................... 6, 7, 9

*Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.,* 7 F.Supp.2d 523, 527 (D.N.J.1998) .................... 11

### Other Authorities

*Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201 (1989) ........................................... 9, 14

### Rules

*Fed. R. Evid.* 804(b)(3)(a) (2013) ............................................................................................... 23

### Treatises

*Wright, Federal Practice* § 2018 ................................................................................................ 15

iv

Defendants James Bartlett Nelson ("Nelson") and Smith Brothers Insurance, Inc. ("SBI") submit the following Joint Memorandum of Law, with exhibits, in support of their Motion to Stay dated February 15, 2013.

## I.     BACKGROUND.

Hanover Insurance Co. ("Hanover") claims that Nelson failed to disclose the involvement of Daniel Gordon ("Gordon") in Citadel Construction Corp. ("Citadel"), an entity to which Hanover provided surety bonds through Nelson and co-defendant SBI. While alleging that Nelson and SBI were Hanover's "agents," the evidence will show that with respect to the Citadel account, only Hanover could issue bonds for Citadel. Several bonds issued by Hanover to Citadel ultimately became the subject of claims and litigation. Hanover alleges that it suffered financial losses resulting therefrom. *See, e.g.,* Complaint, pp. 1-4.

On the very same facts, the same bonds, and the same circumstances, Nelson has been identified as a target of an investigation by the United States Attorney's Office for the Southern District of New York ("USAO"). Nelson awaits action by the USAO, either informing him of an indictment or other resolution of the criminal investigation. *See* **Exhibit A**, Letter from Attorney Kwan-Gett to Attorney Natale dated January 29, 2013. To date, Nelson has not been indicted but the investigation is well underway as Nelson has been both the subject of an individual proffer and an attorney proffer, and several meetings have occurred between Nelson's criminal defense attorney and representatives of the USAO.

The present lawsuit was recently filed in July 2012, and the parties have commenced document discovery, starting with an initial exchange of documents. Hanover's

second disclosure of documents numbered in the tens of thousands of pages. In late December 2012, Hanover's third disclosure of documents comprised more than 6 million pages, including the contents of Citadel's computer server. While the lawsuit itself is recent, the case arises from conduct that began in late 2008 through late 2009. Hanover knew about the facts and circumstances from the moment the first bond claims were made in 2009. SBI and Nelson executed a tolling agreement with Hanover which has since expired. *See* **Exhibit B**, Tolling Agreement.

In recent discovery responses, Nelson and SBI learned that Hanover provided the same documents in discovery to federal and state law enforcement or regulatory agencies, potentially including the Federal Bureau of Investigation as well as the Department of Insurance for the State of New York. *See* **Exhibit C**, Hanover's Responses to Requests for Production of Documents dated December 21, 2012, p. 8, Request #17 & Response.

Hanover claims Nelson concealed Gordon's involvement in Citadel, knowing that Hanover would never had written surety bonds for Citadel with Gordon involved, thereby profiting by receipt of his commission. *See e.g.,* Complaint, pp. 1-4. Later, Citadel failed, resulting in numerous claims on several bonds. The plaintiff's complaint is replete with references to Nelson, his emails, his telephone conversations and his conduct.

Nearly all of Hanover's complaint is dependent on the characterization of and inferences drawn from Nelson's conduct. Hanover alleges that Nelson negligently misrepresented Gordon's involvement in Citadel. Nevertheless, the defendants have countered, suggesting even if Nelson acted as alleged, none of his conduct is the proximate cause of Hanover's losses. Instead, it was Hanover's own poor underwriting practices that were the cause of its losses. *See* Nelson's Answer and Affirmative Defenses, dated

2

September 11, 2012 (Doc. #17); SBI's Answer and Affirmative Defenses, dated September 10, 2012 (Doc. #16). These emails, meeting notes, and telephone conversation are presented to support Hanover's inferences. Nelson's defense is to explain, rebut, and counter these statements and inferences.

Given Hanover's focus, Nelson's testimony is central to Hanover's theory, Nelson's own defense, and, importantly, the defense of SBI, Nelson's employer. It would jeopardize Nelson's criminal defense if he is required to testify in this civil action, or, for that matter, invoke his Fifth Amendment privilege and potentially suffer an adverse inference.  It is more than the fact that Nelson is a central figure in this case; he is, in most instances, the only witness or author of an email or document which is available and central to Hanover's theory of the case. As such, Nelson's invocation of his Fifth Amendment privilege impacts not just his own defense (criminal and civil), but the defense of SBI in this civil case.

But, at the direction of and with the advice of his criminal defense attorney, Nelson intends to assert his Fifth Amendment rights with respect to any testimony sought from him, whether from Hanover, his employer, SBI, or anyone else. Indeed, unless and until the criminal matter has been resolved, Nelson will invoke his Fifth Amendment right against self-incrimination in this civil case. *See* **Exhibit A**.

Nelson and SBI respectfully submit that a stay is appropriate because Hanover's case is based almost entirely on the many documents referenced in the Complaint and the inferences that Hanover wants the fact-finder to draw from those emails and other documents. If Nelson is unable to rebut or explain those documents because he has asserted his Fifth Amendment rights, he will suffer significant and undue prejudice as he will not be able to rebut the inferences that Hanover wishes the fact–finder to draw.

3

Although Mr. Nelson has the absolute right to assert the Fifth Amendment, doing so is particularly prejudicial to SBI given that many of Hanover's allegations address what Nelson knew, particularly about Gordon's role at Citadel.  For example, Paragraph 45 of the Complaint states as follows:

> 45.    Throughout 2005, prior to his incarceration [for an unrelated offense], Gordon remained deeply involved with Stamack [a Citadel predecessor], as Nelson knew from frequent communications with Gordon.

Allegations such as this are common throughout the Complaint, particularly with respect to what Nelson knew about information he provided to Plaintiff. Many of the allegations relate to Gordon's business dealings with Nelson prior to his involvement with Citadel. One key issue, therefore, is Hanover's contention that Gordon was an owner of Citadel, a fact that is in serious dispute. In fact, according to his Bankruptcy Petition, Gordon was not an owner and does not claim an ownership interest in Citadel. *See* **Exhibit D,** Excerpt from Gordon's Bankruptcy Petition dated December 8, 2010. For example, Paragraph 78 of Plaintiff's Complaint states as follows:

> 78.    Nelson knew or should have known that the information he provided to Wright [a Hanover employee] was false, as Nelson had Gordon's PFS [Personal Financial Statement] confirming Gordon was the owner of Citadel.

Additionally, Paragraph 101 of Plaintiff's Complaint states as follows:

> 101.    Upon information and belief, Nelson never discussed directly with Stack or Romero [other individuals listed as owners of Citadel] whether they would agree to sign an indemnity agreement personally indemnifying Hanover.

In Paragraph 104, Plaintiff's Complaint States:

> 104.    SBI failed to disclose to Hanover that no one at SBI ever confirmed with Stack or Romero that they had agreed to indemnify Hanover.

As Nelson is the SBI employee who was most involved with these bonds, his impressions are of vital importance to the defense of SBI. As SBI's employee, Nelson should

4

be able to speak freely with SBI and its counsel about these allegations in order to assist SBI in preparing a defense in this matter. Nelson, of course, cannot speak freely with SBI without fear of his cooperation being construed as a waiver of his Constitutional Rights.

Moreover, Nelson's recollection of events is central to the defense of SBI. Indeed, Nelson is often the only SBI employee mentioned. Further, a simple reading of the allegations will show that Nelson would have to be the only SBI employee with any knowledge of the facts surrounding the allegations, particularly with respect to those allegations that reference what Nelson knew.

Notwithstanding Nelson continuing to be an employee of SBI, based on his criminal attorney's instructions, SBI is not able to discuss the facts or defense of the case regarding these allegations with Nelson. This is particularly prejudicial to SBI's defense. The allegations against SBI are potentially and arguably grounded in vicarious liability. Nelson was the SBI employee who was most involved in the activities surrounding the allegations in the complaint. Obviously, his testimony is critical to any defense SBI will offer. What he knows, when he knew it, and what his dealings were with persons at Citadel and Hanover are of vital importance to the defense. As SBI is not permitted to speak to him or rely on his testimony to support its defense, SBI has and will suffer significant prejudice by the case moving forward. In addition, counsel for SBI cannot effectively depose those persons with whom Nelson was in contact without first knowing what Nelson's testimony would be as to those communications.

Neither Nelson nor SBI seek an open-ended stay of proceedings. Mindful of the Court's need to manage its docket and provide for the orderly flow of civil business as well

as Hanover's interest in the timely adjudication of its claims, Nelson and SBI offer the

following as the proposed order on the motion to stay:

> The civil action is hereby STAYED as to all parties pending the resolution of
> the criminal investigation into James B. Nelson by the United States
> Attorney's Office for the Southern District. Nelson shall notify the court and
> all counsel of record within 30 days of the resolution of that criminal
> investigation. The parties are ordered to file a joint status report by October
> 1, 2013 with a court conference to follow. However, the order staying the
> civil action shall not affect the parties' efforts to mediate this case with
> Magistrate James L. Cott.

For the following reasons, Defendants' Motion to Stay should be granted.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

The Constitution does not ordinarily require a stay of civil proceedings pending the

outcome of criminal proceedings. When the interests of justice so require, a court may

decide in its discretion to stay civil proceedings, *i.e.*, a court in a civil case may exercise its

discretion and grant a stay so that a defendant need not find himself, constitutionally, in the

untenable position of deciding between invoking or waiving 5th Amendment protections.

*See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970); *Kashi v. Gratsos*, 790 F.2d 1050, 1057

(2d Cir.1986) (*citing SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.) (en banc));

*Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993). Depending on

the particular facts of the case, the court may decide to stay civil proceedings, postpone

civil discovery, or impose protective orders. *See SEC v. Dresser Indus.*, 628 F.2d at 1375.

Courts are afforded this discretion because the denial of a stay could impair a party's Fifth

Amendment privilege against self-incrimination, extend criminal discovery beyond the

limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to

6

the prosecution in advance of trial, or otherwise prejudice the criminal case. *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985).

Whether the civil action should be stayed is based on the particular facts before the District Court and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court. The Court's decision on the motion to stay ultimately requires and must rest upon "a ***particularized inquiry*** into the circumstances of, and the competing interests in, the case." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir. N.Y. 2012) (emphasis added); *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (C.A.9 1995); *Volmar Dist., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993 ("Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice.").

The person or party seeking a stay bears the burden of establishing its need. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. N.Y. 2012) (moving party needs to show undue prejudice would result without the stay); *Transatlantic Reinsurance Co. v. Salvatore Ditrapani, Int'l*, 1991 WL 12135, at *2, 1991 U.S. Dist. LEXIS 872, at *5 (S.D.N.Y. Jan. 28, 1991) (*quoting Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118, 1119 (S.D.N.Y.1980)). When parallel criminal proceedings exist, either the criminal defendant or another party whose rights are intertwined with the criminal defendant may properly bring a motion to stay. *See also Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993).

It does not offend the Constitution if a defendant in a civil case is asked questions the answers to which might incriminate him. But even if the defendant's dilemma does not violate the Fifth Amendment or due process, it certainly undercuts the protections of those

provisions, and a court can exercise its discretion to enable a defendant to avoid this

unpalatable choice when to do so would not seriously hamper the public interest. "While a

stay…may cause some inconvenience and delay to the [government], 'protection of

defendant[s'] constitutional rights against self-incrimination is the more important

consideration.'" *Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147, 149-50 (E.D.N.Y. 1977)

(*quoting Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970)).

> **B.     IT IS A PROPER EXERCISE OF THE DISTRICT COURT'S DISCRETION TO ENTER A STAY OF PROCEEDINGS AS TO NELSON BECAUSE HE IS A TARGET OF A FEDERAL CRIMINAL INVESTIGATION ON THE EXACT SAME FACTS AS HANOVER'S COMPLAINT.**

When determining whether to issue a stay of civil proceedings in light of parallel

criminal matters, the district courts of this Circuit typically examine the following six

factors: (1) the extent to which the issues in the criminal case overlap with those presented

in the civil case; (2) the status of the case, including whether the defendants have been

indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed

against the prejudice to plaintiffs caused by the delay; (4) the private interests of and

burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Louis*

*Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. N.Y. 2012); *Trustees of*

*Plumbers & Pipefitters Nat'l Pension Fund v Transworld Mechanical. Inc.,* 886 F. Supp. 1134,

1139 (SDNY 1994); *Parker v. Dawson*, 2007 U.S. Dist. LEXIS 63068 (E.D.N.Y. Aug. 27, 2007);

*SEC v. Treadway*, 2005 U.S. Dist. LEXIS 4951 (S.D.N.Y. Mar. 30, 2005); *Corcoran Law Group*

*LLC v. Posner*, 2009 WL 1739702 (S.D.N.Y.). Given these factors, the defendants submit that

a stay is warranted in this case.

### 1.      The Factual Overlap of Issues Between the Civil and Criminal Matters Strongly Supports The Stay.

The first factor for consideration is the factual overlap between the civil and criminal matters. This analysis informs the weighing of the remaining factors as well as the scope of the potential prejudice to the defendant. A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter. "The most important factor at the threshold is" the first factor: "the degree to which the civil issues overlap with the criminal issues." *Volmar Dist., Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993) (*quoting Judge Milton Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). "If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. at 1139. *See also Corcoran Law Group LLC v. Posner*, 2009 WL 1739702 (S.D.N.Y.) (stay granted when civil and criminal cases arose from same events notwithstanding differing legal theories between civil and criminal matters).

Hanover cannot seriously contest that the issues in this civil case are anything but identical to those covered by the USAO's criminal investigation. These are the same bonds, same people, same places, and same things. It would be wholly inaccurate to say the criminal investigation is tangential to this civil suit. Hanover has conceded it provided the same documents to federal law enforcement and/or regulatory authorities, and possibly the United States Attorney's Office, as it has presented in discovery to the defendants. *See* **Exhibit C**.

Turning to the allegations in the civil suit, Hanover complains that Nelson negligently or intentionally misrepresented the involvement of Gordon in Citadel. *See e.g.,*

9

Complaint, pp. 1 - 4. As a result of that misrepresentation, Hanover claims that it was induced to issue bonds to Citadel. Citadel defaulted later on those bonds. Hanover also claims Nelson breached his fiduciary duties to Hanover. In dispute are the reasons for the default: Hanover claims it was Nelson's conduct; Nelson claims, among other things, that it was Hanover's own deficient underwriting practices that were the proximate cause of its losses and that it would have issued the bonds to Citadel with or without Gordon's involvement.  *See also* Nelson's Third-Party Complaint dated September 11, 2012 (Doc. #28). The criminal investigation covers the same ground. Nelson strongly denies any criminal wrongdoing.

Hanover's 75-page complaint of 291 paragraphs delves into lugubrious detail, citing chapter and verse, quotation after quotation, on the alleged involvement of Nelson and what he purportedly knew, with a level of detail typically absent in civil complaints, particularly in light of federal notice pleading standards. In discovery, Hanover has provided millions of pages of documents that purportedly substantiate these details, all of which, of course, are subject to interpretation and explanation by the authors thereof or the recipients, as well as the facts and circumstances of creation. But Nelson cannot answer one question in discovery or rebut one inference at summary judgment or trial without implicating his constitutional rights under the Fifth Amendment to avoid self-incrimination so long as the criminal investigation remains active and pending. Concomitantly, and given Nelson's invocation of the Fifth Amendment, SBI is significantly prejudiced and detrimentally impacted because it cannot speak with Nelson and ascertain his position on the various documents at issue.

The precise factual overlap between the civil and criminal matters strongly supports the finding that the District Court should enter a stay in this case.

> **2.      Because The Criminal Case Has Progressed Beyond The Investigative Stage, The Status Of The Criminal Case Supports The Stay.**

District Courts in this Circuit also look closely at the status of the criminal investigation when considering a motion to stay. Stays have been issued with and without indictments. *See Kashi v. Gratsos,* 790 F.2d 1050 (2d Cir. N.Y. 1986); *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985); *United States v. Certain Real Property & Premises*, 751 F. Supp. 1060 (E.D.N.Y. 1989); *United States v. $557,933.89, More or Less, in United States Funds*, 1998 U.S. Dist. LEXIS 22252 (E.D.N.Y. Mar. 2, 1998); *In re Marceca*, 131 B.R. 774, 779 (Bankr. S.D.N.Y. 1991). The fact that this motion for a stay is sought pre-indictment does not diminish the rights at issue, the danger to Nelson, or the need for the stay. Indeed, the fact that Nelson has not been indicted, while true, is not a dispositive factor. This Court in *Corcoran Law Group, LLC v. Posner, et al.*, 2009 U.S. Dist. LEXIS 52587 (S.D.N.Y. June 10, 2009) granted a stay when there was no indictment yet in the criminal proceeding.

Nelson would expect Hanover to repeat the off-cited proposition that district courts in this Circuit generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted. Held out as the rule of law, this is, at best, a guide to the exercise of discretion, and not a hard-and-fast rule. There is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment, *see, e.g., Walsh Securities, Inc. v. Cristo Property Mgmt., Ltd.,* 7 F.Supp.2d 523, 527 (D.N.J.1998) ("It is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an

active parallel criminal investigation") (*quoting Milton Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 204 (1989)), and that each case must be evaluated individually. *See, e.g., Volmar Dist., Inc. v. New York Post Co*., 152 F.R.D. 36, 38 (S.D.N.Y.1993) (balancing relevant factors "is a case-by-case determination, with the basic goal being to avoid prejudice").

In the present case, Nelson has had a proffer session with the USAO and his criminal defense attorney has had discussions and meetings with the USAO as well. From this perspective, the criminal case is beyond the investigative stage and it appears that the USAO is weighing whether to seek an indictment. Certainly, the existence of an indictment could make it unnecessary to review the other factors; it does not follow that the absence of an indictment does the same. The absence of an indictment against Nelson does not defeat his request for a stay.

> **3.** **Hanover's Private Interests In Prompt Adjudication Are Weak When Weighed Against Any Delay And Do Not Diminish The Need For The Stay.**

Like most plaintiffs, there can be little doubt that Hanover will assert it should have a prompt adjudication of its lawsuit, emphasizing its own prejudice. However, when weighed against Nelson's Constitutional rights, the factual overlap between this matter and the status of the criminal investigation, and the other factors enumerated by *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83 (2d Cir. N.Y. 2012), Hanover's private interests in prompt adjudication are weak, particularly because Hanover (and its litigation counsel) knew of these issues for a long time, brought suit near the end of the statute of limitations, entered into a tolling agreement between Hanover, Nelson and SBI, and provided the case

documents to one or more federal law enforcement and/or regulatory agencies, potentially including the USAO.

Hanover and its counsel have been involved from early on, pre-suit on the bond claims. Indeed, SBI, Nelson and Hanover tried to work together before and during the claims as Hanover and SBI have enjoyed and continue to enjoy a business relationship beyond surety bonds that are at issue in this case. Additionally, when Hanover suggested that SBI/Nelson sign a tolling agreement, SBI and Nelson complied. Under these facts, Hanover cannot seriously claim it has a strong interest in prompt adjudication of its claims.

Additional facts militate against the elevation of Hanover's private interests in prompt adjudication over Nelson's prejudice. Hanover is pursuing Nelson and SBI (the brokers) despite having general indemnity agreements with Citadel's principals, Stack, Romero and Hassankhani. *See* **Exhibit E**, General Indemnity Agreement with Stack, Romero and Hassankhani. Hanover is, therefore, arguably taking the longer road to collect by suing Nelson and SBI on tort theories rather than collecting on the general indemnity agreements with Citadel's principals. In short, the plaintiff's interests in prompt adjudication are weak in light of Hanover's early involvement, the existence of the tolling agreement, and Hanover's failure to pursue the general indemnity agreements with Citadel's principals.

### 4. The Private Interests Of and The Burden On Defendant Nelson Strongly Support The Entry Of The Stay.

The private interests and burden on the defendants (both Nelson and SBI) is considerable. Absent a stay, Nelson would be left in a terrible predicament: to either invoke the Fifth Amendment and allow an adverse inference to be drawn against him, thus leaving himself at a significant disadvantage in the civil case, or to testify in the civil case and thereby waive his right to invoke the Fifth Amendment. *Corcoran Law Group LLC v. Posner,*

13

*2009 WL 1739702 (S.D.N.Y.)* ("Plaintiffs have a legitimate interest in the expeditious resolution of their case...[t]hese interests...are trumped by [D]efendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case," *quoting Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F. Supp. 1134, 1140).

As noted, when courts have granted stays prior to discovery, they appear motivated by substantial equity issues raised by a dilemma that the defendant Nelson now faces—that is, defending either the civil or the criminal proceeding, but not both. A civil proceeding that pressures the accused to make incriminating statements may still impinge upon the values underlying the privilege and give rise to an equitable claim. *Parallel Civil and Criminal Proceedings*, 129 F.R.D. at 202 (noting that a parallel civil proceeding may cause the defendant to "confront the prospect of divulging information which may incriminate him"). A stay would allow Nelson to "avoid[] the quandary between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1140 (S.D.N.Y.1995); *accord Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993) ("Proceeding with discovery would force these defendants into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit.").

Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless. A party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary

14

judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation. *See Wright, Federal Practice* § 2018, at 288 ("In some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper."). Thus, though a litigant in a civil action is entitled to avoid answering questions that might lead to self-incrimination, this entitlement often conflicts with the litigant's interest in testifying and obtaining whatever benefits such testimony might provide.

The propriety of a stay is obvious when the public interests are weighed against the protection that a stay affords the defendant. The private interests of the defendant, Nelson, (and the co-defendant SBI) are considerable. The burden on Nelson cannot be understated. As SBI's sole material point of contact with Hanover, Nelson's invocation of his Fifth Amendment rights materially prejudices SBI's rights as well. SBI is in no position to explain emails, phone conferences and notes, documents, and the timeline of events without considerable input from Nelson—all of which is unavailable. It is not so much that Nelson and SBI face an adverse inference in the civil proceeding should Nelson invoke his rights. Rather, Nelson and SBI will not be able to mount ***any*** defense unless and until the criminal case is resolved. Nelson's defense is entirely his own testimony, including his explanation of the documents cited by Hanover in its complaint. SBI is dependent on Nelson to explain what he knew and when in order for SBI to present its defense. The predicament, whether it is of constitutional magnitude or not, is sufficient to cause undue prejudice to Nelson such that this private interest is considerable and weighs heavily in favor of granting the stay.

15

**5.      The Interests Of The Courts Favor The Entry Of A Stay.**

It is without question that the District Court has a strong interest in the management of its docket and the speedy, efficient adjudication of civil actions. Indeed, it has been said that courts, generally, prefer to wield as little judicial power as necessary, and then only when necessary. Indeed, the resolution of the criminal matter may increase the possibility of a settlement of the civil case. *Corcoran Law Group LLC v. Posner, 2009 WL 1739702 (S.D.N.Y.)*. ("resolution of the criminal case may increase the possibility of settlement of the civil case…" *quoting Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.* 886 F. Supp. at 1140.). Accordingly, the interests of the court favor the granting of a stay.

**6.      The Public's Interest Favors the Entry of a Stay.**

The public interest would be served by a stay because the case will be decided on the merits and all of the facts as opposed to just those facts and inferences that Hanover would like the fact-finder to infer. As discussed, being forced to choose between the protection of the Fifth Amendment and civil liability would not be in the public's interest. Given that Hanover provided the discovery documents to federal law enforcement, the public's interest is supported by a stay in which civil litigants do not get undue advantage when a civil defendant asserts his/her Fifth Amendment rights against self-incrimination. The public's interests support a stay of this civil matter.

**C.     NELSON'S ASSERTION OF HIS FIFTH AMENDMENT RIGHTS WILL
MATERIALLY PREJUDICE SBI'S ABILITY TO MOUNT ITS
OWN DEFENSE AND, ACCORDINGLY, THE INTERESTS OF JUSTICE,
FAIRNESS, AND EFFICIENCY INDEPENDENTLY SUPPORT THE
ENTRY OF A STAY OF PROCEEDINGS AS TO SBI.**

Although SBI is neither the target of criminal prosecution by the USAO nor does it

have a Fifth Amendment right against self-incrimination, SBI has the right to a stay of the

present civil proceedings brought by Hanover in light of the open criminal investigation of

Nelson independent of Nelson's own rights and interests. *See Volmar Dist., Inc. v. New York

Post Co., Inc.*, 152 F.R.D. 36, 41 (S.D.N.Y.1993); *Corcoran Law Group LLC v. Posner*, 2009 WL

1739702 (S.N.D.Y.); *see also Trustees of Plumbers and Pipefitters National Pension Fund v.

Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y.1995) (more efficient to grant

a complete stay to all the defendants rather than only a partial stay); *American Express

Business Finance Corp. v. RW Professional Leasing Services Corp., 225 F.Supp.2d 263,* 265

(E.D.N.Y. 2002) (efficiency and fairness directed stay of entire matter, including civil case

against corporate employer notwithstanding corporation lacking Fifth Amendment

protections).

In *Corcoran Law Group LLC v. Posner*, 2009 WL 1739702 (S.D.N.Y.), the plaintiff sued

an attorney and her firm based on alleged malfeasance during a residential real estate

closing. At the same time, a parallel criminal proceeding advanced in New York State Court

against the individual attorney. This Court in *Corcoran* concluded that the corporate law

firm defendant, despite lacking a Fifth Amendment privilege against self-incrimination, was

nonetheless entitled to a stay of civil proceedings where the potential criminal defendant

was a central figure in the civil case and a partial stay would lead to duplicative discovery

"or otherwise impair the corporation's ability to defend itself." *Corcoran Law Group LLC v.*

17

*Posner*, 2009 WL 1739702 (S.N.D.Y.), *citing Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 41 (S.D.N.Y.1993). All three elements are present here, compelling the entry of the stay as requested by SBI. Nelson is undoubtedly a central figure in the case, the potential for duplicate discovery exists and, as discussed at length herein, Nelson's assertion of his Fifth Amendment right against self-incrimination will impair SBI's ability to defend itself in this case, both during discovery and on the merits.

Because SBI's entire defense is predicated on the cooperation and participation of its employee, Nelson, to rebut the interferences offered by Hanover, staying the case as to SBI is the most efficient way to handle the matter. SBI needs Nelson to explain the emails, telephone conversations, and documents that are alleged as actionable by Hanover in its complaint. Realistically, SBI had no other material point of contact with Hanover or Citadel regarding the bonds and the claims arising from the bonds. While other SBI employees may have played some role, processed documents, participated in telephone calls, and engaged in other conduct, none are material to SBI's defense as Nelson. Accordingly, the Court should enter a stay as to all defendants.

In a factually analogous situation, the New York State Court in *Britt v. International Bus Servs.*, 255 A.D.2d 143, 679 N.Y.S.2d 616 (1st Dep't 1998) concluded that a stay of civil proceedings in favor of a corporate employer was appropriate when its employee was facing criminal charges in a neighboring state. In *Britt*, a tour bus being operated in New Jersey went out of control, struck a guardrail, and overturned causing several injuries and one death. The Middlesex County, New Jersey Prosecutor indicted the bus driver for one count of vehicular homicide and four counts of assault by auto. Plaintiff, a passenger on the bus, then sued the driver and the bus company in New York. As the Defendant driver

intended to assert his 5th Amendment rights in the civil action, the Defendant bus company moved for a stay of the proceedings pending the resolution of the criminal proceeding. The bus company contended that the driver's testimony was both necessary and critical to a competent defense in the civil action. Without the driver's testimony, there would be no defense available as the claims against it were essentially grounded in vicarious liability.

The trial court denied the bus company's motion for a stay, but the First Department reversed. The First Department concluded that a motion to stay pending resolution of a related criminal matter is within the sound discretion of trial court. *Britt v. International Bus Servs.,* 255 A.D.2d 143, 144, 679 N.Y.S.2d 616 (1st Dep't 1998). The *Britt* court concluded that the court should consider included the risk of inconsistent adjudications, application of proof, and waste of judicial resources. *Britt*, 255 A.D.2d at 144. "A ***compelling factor*** is a situation where a defendant will invoke his or her constitutional rights against self-discrimination." *Britt*, 255 A.D.2d at 144 (citation omitted, emphasis added). There was nothing in the record that indicated the driver gave deposition testimony. As the driver's attorney indicated he would invoke his 5th Amendment rights, the court reversed the trial court and granted the stay even though Plaintiff was prejudiced by the delay. Plaintiff's prejudice was less severe than the prejudice the Defendant bus company would have faced. *Britt*, 255 A.D.2d at 144. Further, Plaintiff still had the right to move to vacate the stay "in the event, the criminal proceeding is not commenced within a reasonable period of time." *Britt*, 255 A.D.2d at 144.

In the instant matter, SBI is in the identical position as the bus company in *Britt*. In many instances, Nelson is the best person, and often the only person, suited to provide answers to any discovery promulgated by Hanover or by any other party or, more

19

importantly, to provide testimony in defense of his actions for which SBI may be found

vicariously liable. Nelson was intimately involved with every facet of the circumstances

giving rise to Hanover's Complaint. Indeed, there are scarcely any paragraphs in the

Complaint in which Nelson is not mentioned.

By way of example, the 291 Paragraph Complaint has several headings and

subheadings. The section entitled, "COMMON ALLEGATIONS," includes the following

examples;

> \*\*\*
> II.      Nelson's Relationship with Gordon and Knowledge of Gordon's Crimes
> (Paragraphs 31-41)
> \*\*\*
> IV.      Nelson Concealed Gordon's Involvement with Stamack from Hanover
> (Paragraphs 45-49)
> \*\*\*
> V.      Nelson's Knowledge of the Formation and Makeup of Citadel (Paragraphs 50-
> 57)
> \*\*\*
> VI.      Gordon Contacted Nelson to Procure Bonds (Paragraph 58-68)
> \*\*\*

Further, for those subheadings that do not specifically name Nelson, they frequently

allege that Nelson was the source of communication between Plaintiff and SBI or between

SBI and Citadel. For example:

> 69.      In January, 2008, Nelson emailed Wright of Hanover regarding a new
> potential account that required surety bonds for $17 million project.

> 70.      On or about January 25, 2008, after receiving information regarding Citadel
> exclusively from Gordon, Nelson submitted a letter to Wright formally introducing
> the potential Citadel account ("Letter of Introduction"). The letter attached the Final
> Questionnaire, various financial statements and other documents.

> \*\*\*

> 74.      The Letter of Introduction and the attached Final Questionnaire contained
> numerous material misrepresentations, which were false, known by SBI and Nelson
> to be false, or which should have been known by them to be false. The Complaint

then details the alleged misrepresentations and Mr. Nelson's alleged complicity in same. Regarding the ownership structure of Citadel, Plaintiff alleges that . . .

***

79.     Nelson knew or should have known that the information he provided to Wright was false, as Nelson had Gordon's PFS confirming Gordon was an owner of Citadel.

The "Common Allegations" continue until Paragraph 257. With respect to each of these allegations, Nelson is prominently featured. Hanover alleges that Nelson failed to inform Hanover that Gordon was the source of the information regarding Citadel's line of credit and that Nelson never confirmed its existence (Paragraph 82). Hanover also alleges that Nelson failed to disclose Citadel's need for Tax Bond with regard to work in Arizona. (Paragraph 83-88). The list goes on and on in Hanover's exhaustive Complaint. Allegations of what Nelson did or did not do, what he knew or did not know, and with whom he communicated and the content of those communications, are at the heart of Hanover's Complaint. Therefore, Nelson's factual knowledge, impressions, and testimony are central to SBI's defense.

In addition, the *Britt* case observed that the completion of discovery prior to the institution of criminal charges normally militates against the granting of a stay. However, that situation is not present here. Indeed, discovery is not complete and, in fact, other than document discovery, is about to begin. Access to Nelson is critical to SBI's defense. Without it, SBI has a void in its defense which severely prejudices its ability to answer these claims. This is especially troubling considering that Nelson's alleged knowledge is featured prominently throughout the Complaint. Without Nelson, SBI cannot develop any response to these allegations. Therefore, SBI can neither assess the validity or strength of Hanover's claims, nor can SBI prepare a competent defense against these arguments.

21

In *DeSiervi v. Liverzani*, 136 A.D.2d 527, 523 N.Y.S.2d 147 (2nd Dep't 1988), the Second Department addressed a motion for a stay made by the party under criminal prosecution. The trial court in *DeSiervi* stayed the civil matter pending resolution of the criminal proceeding. On appeal, the Second Department observed that there is no absolute right under the United States or New York Constitutions to stay a civil proceeding pending resolution of a related criminal proceeding, *DiSiervi*, 136 A.D.2d at 527; *accord Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99-100 (2d Cir. N.Y. 2012). Notwithstanding the inconvenience and delay to a plaintiff, the *DiSiervi* court concluded that the protection against self-discrimination is the "more important consideration." *DeSiervi*, at 527; *accord*, *Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147, 149-50 (E.D.N.Y. 1977); *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970). Further, a prior determination in the criminal action could potentially have collateral estoppel effects in the case and could therefore reduce the scope of discovery and simplify the issues. *DeSiervi*, at 527. *See also Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1140 (S.D.N.Y.1995*); Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993); *Corcoran Law Group LLC v. Posner, 2009 WL 1739702 (S.D.N.Y.)*. The Court also implied that the prejudice to the plaintiff is reduced so long as the Court periodically reviews the stay.

Further, any assertion that SBI and its attorneys could still speak to Nelson without violating Nelson's 5th Amendment rights is spurious and would have the effect of violating Nelson's right against self-incrimination through other testimony. SBI's attorneys are not Nelson's attorneys. Therefore, Nelson cannot assert that an attorney-client privilege attaches to his communications with SBI's attorneys. In theory, SBI's attorneys could be

subject to a grand jury subpoena (or even subject to a deposition notice in the civil matter) to testify as to what they had been told by Nelson. Such communications between Nelson and SBI's attorneys would be potentially admissible under the hearsay exception of a statement against interest. *Fed. R. Evid.* 804(b)(3)(a) (2013). Indeed, the Second Circuit requires that the trial judge be only satisfied that the communications fall within the hearsay exception and that attending circumstances confirm its trustworthiness before a jury can hear the testimony and assess the credibility of the witness. *U.S. v. Katsougrakis*, 715 F.2d 769, 777 (2nd Cir. 1983). Therefore, any ruling that nothing prohibits SBI's attorneys from speaking to Nelson would circumvent the intentions of the 5th Amendment, which is to prevent a person under criminal investigation from incriminating himself.

In addition, Nelson has been advised not to discuss this matter with SBI's attorneys for fear of jeopardizing his 5th Amendment rights. *See* **Exhibit A**, Letter from Attorney Kwan-Gett to Attorney Natale dated January 29, 2013.  As SBI's attorneys are not Nelson's attorneys, he is under no obligation to speak with them and to assist them in constructing a defense. Therefore, even if SBI's attorneys are permitted to speak with Nelson, Nelson does not have to speak with SBI's attorneys.

Accordingly, the District Court should enter the stay as to SBI.

## III.     CONCLUSION.

For the above-stated reasons, the Defendants pray that the Joint Motion for Stay is granted in all respects.

GOLDEN, ROTHSCHILD, SPAGNOLA,
LUNDELL, BOYLAN & GARUBO, P.C.
Attorneys for Defendant, Smith Brothers
Insurance Co., Inc.

By: /s/ Kenneth R. Rothschild
     KENNETH R. ROTHSCHILD
     JEFFREY M. KADISH
     1011 Route 22 West, Suite 300
     P.O. Box 6881
     Bridgewater, NJ 08807
     Tel.: (908) 722-6300
     Fax: (908) 722-0029

NATALE & WOLINETZ,
Attorneys for Defendant, James Bartlett
Nelson

By: /s/ Anthony J. Natale
     ANTHONY J. NATALE
     116 Oak Street
     Glastonbury, CT 06033
     Tel.: (860) 430-1802
     Fax: (860) 430-1809

Dated:          February 15, 2013

## <u>CERTIFICATION</u>

   This is to certify that on this 15TH day of February 2013, a copy of the foregoing Joint Memorandum of Law in Support of Defendants' Motion to Stay was filed electronically with the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and as follows to all those unable to receive notices from the Court's CM/ECF system.

Mohammad Hassankhani
798 Undercliff Avenue
Edgewater, NJ 07020
<u>MO798HASS@gmail.com</u>

          <u> /s/ Anthony J. Natale   </u>
          Anthony J. Natale